UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
STEPHEN EPSTEIN,

                    Plaintiff,

                                        MEMORANDUM & ORDER
          -against-                     14-CV-0937(JS)(ARL)

COUNTY OF SUFFOLK, SUFFOLK COUNTY
COMMUNITY COLLEGE, PINA BRITTON,
CARLA MAZZARELLI, and JEFFREY
TEMPERA, in their individual
capacities,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiffs:     Steven A. Morelli, Esq.
                    Anabia Hasan, Esq.
                    The Law Offices of Steven A. Morelli, P.C.
                    1461 Franklin Avenue
                    Garden City, NY 11530

For Defendants:     Elaine M. Barraga, Esq.
                    Leonard G. Kapsalis, Esq.
                    Suffolk County Attorney's Office
                    100 Veterans Memorial Highway
                    P.O. Box 6100
                    Hauppauge, NY 11788

SEYBERT, District Judge:

          Plaintiff Steven Epstein ("Epstein" or "Plaintiff")

commenced this action on February 12, 2014, against defendants

County of Suffolk (the "County"), Suffolk County Community College

("SCCC"), and Pina Britton ("Britton"), Carla Mazzarelli

("Mazzarelli"), and Jeffrey Tempera ("Tempara") (collectively the

"Individual Defendants," and together with the County and SCCC,

"Defendants"), alleging constitutional violations pursuant to 42

U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 12101 et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), and 29 U.S.C. § 621 et seq. (Compl. ¶ 1.)

Currently pending before the Court is Defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is GRANTED.

BACKGROUND[1]

Plaintiff joined the staff of the communications faculty at SCCC in 2003. (Compl. ¶ 20.) In 2005, Plaintiff was asked to serve as co-advisor to the Phi Theta Kappa Honor Society and to direct the Honors Program at the Grant Campus of SCCC. (Compl. ¶ 23.) In 2006, Plaintiff was granted tenure, and in 2007, he was promoted to Associate Professor. (Compl. ¶ 22.)

After his appointment, Plaintiff began to notice discrepancies in Defendants' implementation of its policies and procedures. (Compl. ¶ 25.) Plaintiff claims that Defendants would routinely permit unqualified students to enroll in honors courses, allow students to use non-honors courses to qualify for an honors diploma, and would permit students who enrolled in the honors

---

[1] The facts, as stated herein, are taken from the Complaint, and for the purpose of deciding this motion, are regarded as true.

program to be excused from taking a "College Seminar," a college-wide requirement, while still being permitted to graduate. (Compl. ¶ 25.) Plaintiff vocalized his concerns that this practice diminished the quality of SCCC's honors program and its academic reputation. (Compl. ¶ 25.)

Plaintiff also vocalized his opposition to the unequal distribution of resources among the three campuses, which he claimed disproportionately impacted minority students. (Compl. ¶ 26.) Plaintiff contended that SCCC favored the Selden campus, which was predominately Caucasian, over the Brentwood and Riverhead campuses.[2] (Compl. ¶ 26.)

Plaintiff also protested the use of advertisements, which he claimed had racist overtones and failed to feature minority students in speaking roles. (Compl. ¶ 28.) On January 27, 2013, Plaintiff reiterated his concerns regarding the demographic makeup of the Honors Program, maintaining that Defendants' admission criteria disproportionately impacted minority students. (Compl. ¶ 29.)

In March 2013, Plaintiff filed a complaint with the Board of Academic Standards Committee (the "Board") requesting that they

---

[2] Plaintiff alleges that examples of such favoritism included, Defendants' policy requiring students to travel to the Selden campus for honors events, and requiring faculty from the Brentwood and Riverhead campuses to travel to the Selden campus for faculty development. (Compl. ¶ 27.)

investigate Defendants' failure to follow its internal policies by permitting unqualified students to enroll in honors courses. (Compl. ¶ 30.) That same month, in March 2013, Plaintiff was charged with violating the Family Educational Rights and Policy Act ("FERPA").[3] (Compl. ¶ 31.) Plaintiff claims that Defendants' allegations were carried out in retaliation to Plaintiff's First Amendment rights. (Compl. ¶ 32.)

Plaintiff claims that Defendants instituted a discriminatory and retaliatory campaign against him during the 2011-2012 school years, based upon his age, disability, and in retaliation for his protected speech. (Compl. ¶ 33.) For example, Plaintiff alleges that in the spring of 2012, despite his repeated requests, Defendants refused to place Plaintiff on the faculty list for receipt of a summer stipend to run SCCC's honors program. (Compl. ¶ 34.) Plaintiff also claims that in May of 2012, he was denied a promotion under the pretext the he did not provide sufficient service to the college, despite the fact that he was (1) the only individual at the college who held coordinating positions; (2) grew each of his assigned programs beyond expectations; and (3) routinely presented before the SUNY

---

[3] Plaintiff claims his actions were in full compliance with FERPA, because he did not publish any student names or identifying information and solely communicated the information to members of SCCC governance in charge of making policy recommendations to the administration. (Compl. ¶ 31.)

4

chancellor, members of the Board of Trustees, and the Dean's council regarding the college programs at all three college campuses. (Compl. ¶ 35.) Plaintiff maintains that in the summer of 2012, he was denied the position as coordinator of the honors program and the accompanying summer stipend, which he had received since 2005. Plaintiff claims that younger individuals were allowed to retain their positions and receive their stipend. (Compl. ¶ 36.)

Plaintiff alleges that in August of 2012, he was stripped of all duties as the coordinator of the Grant Campus Honors program, the College-Wide Early College Program, and the College Wide Stay on Long Island Scholarship Program. (Compl. ¶ 37.) Defendants assert that the position was being eliminated due to budgetary concerns. (Compl. ¶ 37.) Plaintiff alleges that SCCC began recruiting and advertising for the position before it was "eliminated," and appointed a younger individual to the position. (Compl. ¶ 37.) When Plaintiff sought reinstatement of his former position in the fall of 2012, Defendants failed to address his request. (Compl. ¶ 37.) Finally, in October 2012, defendant Britton, an Assistant Dean, lodged a bullying complaint against Plaintiff. (Compl. ¶ 39.) Plaintiff claims that Britton's complaint was in retaliation for the complaints Plaintiff made regarding the tri-campus equity and its impact on minority students enrolled at SCCC. (Compl. ¶ 39.)

In September of 2012, Plaintiff underwent an operation to relive Achalasia, a digestive disorder which makes it difficult and painful to swallow. (Compl. ¶ 42.) As a result of the operation, Plaintiff must sleep in a reclining position which "often makes it difficult to obtain restful sleep." (Compl. ¶ 42.) Because of his condition, Plaintiff asked to teach a reduced course load and receive a corresponding reduction in his salary. (Compl. ¶ 43.) Although Plaintiff provided medical documentation in support of his condition, Defendants ultimately failed to provide the requested accommodation. (Compl. ¶¶ 45-49.)

I. <u>Plaintiff's First Complaint to the N.Y.S. Div. of Human Rights</u>

On April 10, 2013, Plaintiff filed a complaint (the "2013 DHR Complaint") with the New York State Division of Human Rights ("DHR"), alleging that he was discriminated against based upon his age and disability. (Compl. ¶ 5.) The April 2013 DHR Complaint alleged that the Defendants discriminated against him by failing to accommodate his medical disability. (Exhibits to Defs.' Br. ("Defs.' Exs."), Docket Entry 6-2, at 29[4].) Plaintiff alleged that he was disabled due to heart disease and an unspecified digestive order that caused him not to be able to get "adequate sleep." (Defs.' Exs. at 29.) Plaintiff, who resides in

_____

[4] As the Exhibits are not correctly identified (<u>e.g.</u>, there are 2 Exhibit A's and 2 Exhibit B's, etc.), therefore when citing to the Exhibits, the page numbers generated by the Electronic Case Filing System are used instead of the exhibit letter.

Westchester County and works as an Associate Professor at SCCC's Michael J. Grant Campus ("Grant Campus") in Brentwood, NY, claimed he requested an accommodation to teach via "distance education," so he would not have to be present on campus because "he often drive[s] to and from campus while fatigued." (Defs.' Br., Docket Entry 7, at 2; Defs.' Exs. at 29.)

The April 2013 DHR Complaint also alleged discrimination based on age. Specifically, the April 2013 DHR Complaint asserts that on August 12, 2012, Plaintiff was removed from his position as Honors Coordinator at the Grant Campus due to his age. (Defs.' Exs. 30.) Plaintiff's claim was based on his belief that his "removal was due to age discrimination so that the position could be filled by a younger person." (Defs.' Exs. at 30.)

After an investigation, the DHR issued a Determination and Order After Investigation (the "April Determination"), finding "NO PROBABLE CAUSE" to believe that Plaintiff was discriminated against because of his alleged disability or age. (Defs.' Exs. at 33.) The April Determination found that Plaintiff resided fifty-one miles from his place of employment and is subject to a two-hour drive. (Defs.' Exs. at 33.) The DHR found that the "accommodation sought by the [Plaintiff] to telecommute and avoid the long commuting drive places the employer under no obligation to meet the personal preferences of a disabled employee." (Defs.' Exs. at 33.) The DHR concluded that "[d]ifficulties commuting to

a job need not be accommodated.  There is no evidence that driving

is an essential function of the [Plaintiff's] job.  The [Defendant]

is not obligated to accommodate the [Plaintiff's] request."

(Defs.' Exs. at 34.)

As to Plaintiff's age discrimination claim, the DHR

concluded that Plaintiff's assertion that "he was removed as the

Honors Program Coordinator, because of his age" is not supported

by the evidence.  (Defs.' Exs. at 33.)  The DHR found that while

Plaintiff's replacement was younger than Plaintiff, eight

candidates were suggested to replace Plaintiff and the position

was offered to three of the eight suggested candidates, two of

whom were close in age to Plaintiff.[5]  (Defs.' Exs. at 34.)

## II.  Plaintiff's Second Complaint to DHR

On or about August 8, 2013, Plaintiff filed a second

complaint with the HDR alleging discrimination.  (Defs.' Exs. at

36.)  Plaintiff's second DHR Complaint alleged, inter alia, that

SCCC administrators engaged in a harassment campaign against

Plaintiff in an effort to intimidate him for requesting a

disability accommodation.  (Defs.' Exs. at 43.)  The retaliatory

campaign included charges and investigations against Plaintiff for

---

[5] Both of the candidates that were close in age to Plaintiff,
declined the appointment.  (Defs.' Exs. at 34.)  "As a result,
the position was offered to the candidate that holds the
position at the present time who happens to be younger than the
[Plaintiff]."  (Defs.' Exs. at 34.)

bullying and violations of the Family Educational Rights and Privacy Act ("FERPA"). (Defs.' Exs. at 43.) In a Determination and Order of Dismissal for Administrative Convenience, the DHR dismissed the August Complaint because Plaintiff indicated that he wished to pursue the matter in Federal Court. (Defs.' Exs. at 47.) On November 15, 2014, the Equal Employment Opportunity Commission issued a right-to-sue letter. (Defs.' Exs. at 50.)

III. <u>Federal Complaint</u>

Plaintiff commenced this action on February 12, 2014, alleging claims for: (1) retaliation under the First Amendment of the United States Constitution; (2) discrimination based on his and disability under the ADA, the ADEA, and the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C § 1983; (3) hostile work environment under the ADA, the ADEA, and the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C § 1983; (4) retaliation under the ADA, the ADEA, the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C § 1983, and New York State Executive Law ("NYSEL") § 290 <u>et</u> <u>seq.</u>; (5) participation, aiding, abetting, inciting, compelling, and coercion of the discrimination and retaliatory treatment by defendants Britton, Mazzarelli and Tempera under the ADA, the ADEA, the First Amendment, and the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C § 1983, and NYSEL § 290 <u>et</u> <u>seq</u>. (Compl. §§ 51-56.)

<u>DISCUSSION</u>

The Court will first set forth the applicable legal standards before turning to Defendants' motion more specifically.

I.   <u>Legal Standards</u>

A.   <u>Rule 12(b)(1)</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other material beyond the pleading to resolve jurisdictional questions. <u>See</u> <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008). The Court must accept as true the factual allegations contained in the Complaint, but it will not draw argumentative inferences in favor of Plaintiff because subject matter jurisdiction must be shown affirmatively. <u>See</u> <u>id.</u>; <u>Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.</u>, 968 F.2d 196, 198 (2d Cir. 1998); <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. <u>Morrison</u>, 547 F.3d at 170.

B.   <u>Rule 12(b)(6)</u>

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo

working principles." Ashcroft v. Iqbal, 556 U.S. 662, 678, 12 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72. Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

Furthermore, in deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations

omitted); <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 773 (2d Cir, 1991).

## II.  <u>Liability Against the Individual Defendants</u>

As a preliminary matter, Defendants correctly note that individuals are not subject to liability under either the ADA or ADEA, (Defs.' Br., Docket Entry 6, at 5-6); <u>see Jiggets v. Diez</u>, No. 02-CV-8959, 2009 WL 749575, *1 n.1 (S.D.N.Y. Apr. 2, 2009)(holding that that there is no individual liability under the ADA); <u>Spiegel v. Schulmann</u>, No. 03-CV-5088,, 2006 WL 3483922, *20 (E.D.N.Y. Nov. 30, 2006) ("It is well settled that an individual may not be held personally liable under the ADA") (internal citation and quotation omitted); <u>Guerra v. Jones</u>, 421 F. App'x 15, 17 (2d Cir. 2004) ("[D]ismissal of the Title VII and ADEA claims against the individual [d]efendants was appropriate as neither statute subjects individual, even those with supervisory liability over the plaintiff, to personal liability."). Accordingly, Plaintiff's ADA and ADEA claims against Britton, Mazzarelli, and Tempera are DISMISSED WITH PREJUDICE.

## III.  <u>ADA Claims</u>

### A.  <u>Pleading Standard Under the ADA</u>

Claims under the ADA, such as the one Plaintiff raises here, are subject to the same burden-shifting framework under <u>McDonnell Douglas</u> as Title VII claims.  <u>See</u>, <u>e.g.</u>, <u>Heyman v. Queens Vill. Comm. for Mental Health</u>, 198 F.3d 68, 72 (2d Cir. 1999); <u>see</u>

also <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1917, 36 L. Ed. 2d 668 (1973). That framework requires a plaintiff to first establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

B.  <u>Plaintiff's ADA Discrimination Claim</u>

Plaintiff alleges that Defendant SCCC discriminated against him on the basis of disability or perceived disability. However, as discussed below, Plaintiff's claim must be dismissed because he did not plausibly allege that he is disabled or that SCCC regarded him as being disabled.

The ADA prohibits discrimination against a "qualified individual on the basis of disability" in the "terms, condition, and privileges of employment."  42 U.S.C. § 12112(a).  To state a claim for discrimination under the ADA, a plaintiff must allege that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with our without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." <u>Capobianco v. City of N.Y.</u>, 422 F.3d 47, 56 (2d Cir. 2005).

Defendants do not dispute that Plaintiff adequately alleged that SCCC is covered by the ADA, or that Plaintiff was qualified to perform the essential functions of a professor. Rather, Defendants argue that dismissal is warranted because Plaintiff failed to adequately allege that he is disabled or that Defendants regarded him as disabled.

Plaintiff claims that he is disabled within the meaning of the ADA (Compl. ¶ 10), and describes his disability as "being required to sleep in a reclining position which often makes it difficult to obtain restful sleep." (Compl. § 42.) Under the ADA, the term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1). To be substantially limited from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 185, 122 S. Ct. 681, 685, 151 L. Ed. 2d 615 (2002). Moreover, "[t]he impairment's impact must also be permanent or long term." Id.; see also Williams v. Salvation Army, 108 F. Supp. 2d 303, 312-13 (S.D.N.Y. 2000) ("temporary, non-chronic impairments of short duration, with little or no long term or permanent impact,

are usually not disabilities") (internal quotation marks and citations omitted); 29 C.F.R. § 1630.2(j)(1)(i)-(ii) (A major life activity is substantially limited when an individual cannot perform an activity that an average person in the general population could perform. "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability . . . ."). Finally, determining whether or not a person suffers a disability under the ADA "is an individualized inquiry" that does not rest on the mere diagnosis of an impairment. <u>Sutton v. United Airlines</u>, 527 U.S. 471, 472, 119 S. Ct. 2139, 2142, 144 L. Ed. 2d 450 (1999). Instead, courts must make an "individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv); <u>see also</u>, <u>Reeves v. Johnson Controls World Servs., Inc.</u>, 140 F.3d 144, 151 (2d Cir. 1998) (noting that disability determination is to be made on an "individualized case-by-case basis").

Plaintiff alleges that he was disabled because an operation he had "to relieve Achalasia," (a digestive disorder) required him to "sleep in a reclining position which often ma[de] it difficult to obtain restful sleep." (Compl. ¶ 42.) Although sleep is a major life activity, as defined by the ADA, whether a person is legally disabled because of an inability to fall asleep depends upon the severity of their condition. <u>See</u> <u>Reilly v.</u>

_Revlon, Inc.,_ 620 F. Supp. 2d 524, 540 (S.D.N.Y. 2009).

Plaintiff's claim that it was difficult for him get a restful

night's sleep does not adequately describe a condition that

substantially limits a major life activity.   Moreover, the

Complaint is devoid of additional facts addressing the severity of

Plaintiff's condition.   Plaintiff's ADA claim is therefore

DISMISSED WITHOUT PREJUDICE.

IV.   ADEA Claim

    A.   Pleading Standard Under the ADEA

       ADEA claims are analyzed under the burden-shifting

paradigm established by the Supreme Court in _McDonnell Douglas_

_Corp. v. Green_, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668

(1973).   See _Sutera v. Schering Corp.,_ 73 F.3d 13, 16, 16 n.2 (2d

Cir. 1995) (stating that courts apply the _McDonnell Douglas_ burden-

shifting framework to claims under the ADEA and the NYHRL).   Under

_McDonnell Douglas_, the plaintiff bears the initial burden of

establishing a prima facie case of discrimination or retaliation.

411 U.S. at 804.   To establish a prima facie case of

discrimination, a plaintiff "must show (1) that she was within the

protected age group, (2) that she was qualified for the position,

(3) that she experienced adverse employment action, and (4) that

such action occurred under circumstances giving rise to an

inference of discrimination.   _Gorzynski v. Jetblue Airways Corp.,_

596 F.3d 93, 107 (2d Cir. 2010) (citation omitted); _Bucalo v._

Shelter Island Union Free Sch. Dist., 691 F.3d 119, 129 (2d Cir. 2012).

The Supreme Court has held, however, that a plaintiff need not plead the elements of a prima facie case in his or her complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002) ("The prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement."). Rather, a complaint need only contain a "'short and plain statement of the claim showing that the pleader is entitled to relief,'" and "'giv[ing] the defendant fair notice of what the plaintiff's claim is and the grounds upon what it rests.'" Id. at 512 (quoting FED. R. CIV. P. 8(a)(2); accord Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Thus, reconciling Swierkiewicz with Twombly and Iqbal, although "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss . . . , the claim must be facially plausible and must give fair notice to defendants of the basis for the claim." Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks and citation omitted); accord King v. U.S. Sec. Assocs., Inc., No. 11-CV-4457, 2012 WL 4122025, at *4 (S.D.N.Y. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal,

556 U.S. at 678 (citation omitted); <u>accord</u> <u>Turkmen v. Ashcroft</u>, 589 F.3d 542, 546 (2d Cir. 2009). "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a prima facie case." <u>King</u>, 2012 WL 4122025, at *5 (collecting cases).

B.    Plaintiff's ADEA Discrimination Claim

Defendants argue that the Plaintiff's ADEA discrimination claim should be dismissed because: (1) Plaintiff fails to state his age in the Complaint, thus failing to establish that he is a member of a protected class; (2) Plaintiff fails to set forth any specific details which led to the adverse employment action; and (3) Plaintiff's allegation that "a younger individual" was appointed to the coordinator position, is not, alone, sufficient to support a claim of age discrimination. (Defs.' Br. at 12.)

The Court agrees that Plaintiff has failed to allege that he is a member of a protected class, because the Complaint is devoid of any suggestion as to Plaintiff's age. Additionally, Plaintiff's allegation that "a younger individual" (Compl. ¶ 37) was appointed to the coordinator position is insufficient to support an inference of age discrimination. <u>See</u> <u>e.g.</u> <u>Fagan v. N.Y. State Electric & Gas Corp.</u>, 186 F.3d 127, 134 (2d Cir. 1999) ("The replacement of an older worker with a younger worker or workers does not itself prove unlawful discrimination."; <u>Foster v.</u>

Humane Soc'y of Rochester and Monroe Cnty., Inc., 724 F. Supp. 2d 382, 391 (W.D.N.Y. 2010) (finding that an allegation that the plaintiff was replaced by a woman in her early thirties, "is not enough to give rise to an age discrimination claim."); Gundlach v. Int'l Bus. Machines Corp., No. 11-CV-0846, 2012 WL 1520919, at *6 (S.D.N.Y. May 1, 2012), aff'd on other grounds, 594 F. App'x 8 (2d Cir. 2014) (finding that an allegation that the plaintiff's work was divided among other personnel, at least one of whom was considerably younger than the plaintiff, after his employment was terminated was insufficient to state a plausible claim of age discrimination); Nance v. City of New York, No. 09-CV-2786, 2011 WL 2837491, at *4 (E.D.N.Y. July 14, 2011) ("[A]n allegation that plaintiff was replaced by a younger employee is not sufficient, without more, to survive a motion to dismiss.").  Accordingly, the Court finds that Plaintiff's ADEA discrimination claim is hereby DISMISSED WITHOUT PREJUDICE.

V.   Constitutional Claims

        The Plaintiff assets causes of action in the Complaint pursuant to 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments.

    A.   Liability Under Monell

        Because Plaintiff's constitutional claims are brought under 42 U.S.C. § 1983, and because a municipality is a named defendant, the Court must consider whether the allegations in the

19

Complaint are sufficient to satisfy Monell's requirements. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691-92, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978); Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008).

To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." Cash v. Cnty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011)). "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91, 98 S. Ct. at 2036 (citation omitted).

To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy making officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate

indifference to the rights of those who come in contact with the municipal employees. Moray v. City of Yonkers, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citations omitted).

Here, the Complaint fails to allege that decisions effecting Plaintiff's employment were based on a county policy or custom of discrimination based on age or disability. See Sarus v. Rotundo, 831 F.2d 397, 400 (2d Cir. 1987) ("[t]o recover against the municipality, it must be demonstrated that the official policy in question constitutes the moving force of the constitutional violation") (internal quotation marks and citation omitted). Plaintiff's opposition memorandum argues that "Defendants collectively violated his constitutional rights by engaging in a custom or practice predicated upon his protected speech, disability and age." (Pl.'s Br., Docket Entry 12, at 10.) However, this statement alone is insufficient. These facts are asserted in Plaintiff's Memorandum of Law, not in the Complaint, and as such cannot be properly considered by the Court in deciding the Motion to Dismiss. See Paul v. Baily, No. 09-CV-5784, 2013 WL 2896990, at *5 (S.D.N.Y. June 13, 2013) ("[A]s a general rule, . . . courts should not consider factual allegations made for the first time in opposition papers."); Friedman v. MiraMed Revenue Grp., LLC, No. 12-CV-5328, 2012 WL 5992163, at *3 (S.D.N.Y. Nov. 19, 2012) ("[T]he [c]ourt declines to consider the additional facts set forth in plaintiff's opposition papers that are not in

his complaint."); <u>Kalin v. Xanboo</u>, 526 F. Supp. 2d 392, 398-99 (S.D.N.Y. 2007) (holding that a court's analysis under Rule 12(b)(6) "is limited to information contained within the four corners of the complaint" and that "[w]hen material outside the pleadings is presented in response to a motion to dismiss, the court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment" (internal quotation marks and citations omitted)).  Thus, because Plaintiff has failed to allege the existence of a municipal policy or custom sufficient to impose municipal liability in the Complaint, Plaintiff's Section 1983 claim against the County is DISMISSED WITHOUT PREJUDICE.

B.    First Amendment Retaliation

Plaintiff brings his First Amendment retaliation claim, pursuant to 42 U.S.C. § 1983.  "Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999).  Section 1983 "'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those part of the United States Constitution and federal statutes that it describes.'" <u>Nasca v. Cnty. of Suffolk</u>, 933 F. Supp. 2d 437, 442 (E.D.N.Y. 2013) (quoting

Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).

Defendants claim that Plaintiff has failed to make out a prima facie First Amendment retaliation claim. (Defs.' Br. at 6-9.) To make out a prima facie case of First Amendment retaliation, a public employee must put forth evidence showing that: "'(1) he engaged in constitutionally protected speech because he spoke as a citizen on a matter of public concern; (2) he suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision.'" Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 503 (E.D.N.Y. 2011) (quoting Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir, 2006), overruled on other grounds by Appel v. Spriridon, 531 F.3d 138, 140 (2d Cir. 2008)). Defendants may still escape liability, however, "'if they can demonstrate that either (1) the defendant would have taken the same adverse action against the plaintiff regardless of the plaintiff's speech; or (2) the plaintiff's expression was likely to disrupt the government's activities and that the harm, . . . outweighs the value of the plaintiff's expression.'" Id. (quoting Skehan, 465 F.3d at 106).

Plaintiff claims he engaged in constitutionally protected speech by: (1) making statements concerning the disparity of resources afforded to the three college campuses; (2) making statements about the use of college advertisements, which

Plaintiff maintained had racist overtones; and (3) vocalizing concerns about the demographic makeup of SCCC's honors program and its admissions criteria. (Pl.'s Br. at 13.) Defendants dispute that Plaintiff's speech was constitutionally protected.

At the outset, the Court notes that Plaintiff's Complaint is replete with naked assertions that Defendants' complained-of conduct was inflicted in retaliation for his public statements. These conclusory allegations of causation will simply not support a First Amendment retaliation claim. See Geiger v. Town of Greece, No. 07-CV-6066, 2007 WL 4232717, at *9 (W.D.N.Y. Sep. 4, 2007) (causation not adequately pled by "purely conclusory" allegations). Nevertheless, assuming arguendo that Plaintiff had alleged sufficient facts, Plaintiff's claim would still fail.

As to the nature of his speech, Plaintiff has failed to satisfactorily allege that he was speaking as a citizen on a matter of public concern. First, Plaintiff's duties as a professor and/or as Coordinator of the Honors Program did not require him to evaluate his students and the students within the Honor's Program, which is what Plaintiff's speech concerned. See Garcetti v. Ceballos, 547 U.S. 410, 421, 126 S. Ct. 1951, 1959-60, 164 L. Ed. 2d 689 (2006) (assistant district attorney was not speaking as a citizen when his expressions were made "pursuant to his duties"). Although, speech can be "pursuant to" public employees' official duties "even though it is not required by, or included in, the

employee's job description, or in response to a request by the employer," Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 593 F.3d 196, 203 (2d Cir. 2010) (internal quotation marks and citation omitted), the speech in this case--objections to the college permitting unqualified students to enroll in its Honors Program, and speech concerning SCCC's advertising, admissions, and campus budget policies having a disparate impact on minority students--were inherent to Plaintiff's role as a professor, a "means to fulfill" his responsibilities, and "undertaken in the course of performing" his job. Id. (internal quotation marks and citation omitted); see also Garcetti, 547 U.S. at 422 (contrasting the assistant district attorney's case with a schoolteacher "whose letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day."

Second, Plaintiff's speech did not relate to an issue of public concern in the sense that it was of some general societal interest. "To constitute speech on a matter of public concern, an employee's expression must 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Jackler v. Byrne, 658 F.3d 225, 236 (2d Cir. 2011) (quoting Connick v. Myers, 461 U.S. 138, 146, 103 S. Ct. 1684, 1690, 75 L. Ed. 2d 708 (1983)); see Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 44 F.3d 158, 163 (2d Cir. 2006) (whether speech related to a matter of public concern depends on the

"'content, form, and context of a given statement, as revealed by
the whole record'" (quoting Connick, 461 U.S. at 147-48)).  This
can be a broad test; for example, "a topic is a matter of public
concern for First Amendment purposes if it is 'of general
interest,' or 'of legitimate news interest,' or 'of value and
concern to the public at the time' of the speech." Jackler, 658
F.3d at 236 (quoting City of San Diego v. Roe, 543 U.S. 77, 83-
84, 125 S. Ct. 521, 525-26, 160 L. Ed. 2d 410 (2004)).  Here,
Plaintiff's speech pertained to programs and services provided by
SCCC to its students and faculty, including the Honors Program and
faculty development courses.  Such speech does not rise to the
level of public concern.  Cf. Cioffi, 444 F.3d at 165 ("abundant
press coverage" of a hazing incident helped show that plaintiff's
letter concerning the incident was speech on a matter of public
concern); cf. also, Reuland v. Hynes, 460 F.3d 409, 418 (2d Cir.
2006) (statement made in an interview to New York Magazine related
to matter of public concern).

In sum, Plaintiff fails to adequately allege that his
speech was protected, and thus, fails to state a claim for First
Amendment retaliation.  Accordingly, Plaintiff's First Amendment
retaliation claims as against SCCC and the individual Defendants
are DISMISSED WITH PREJUDICE.

C.  Equal Protection

Plaintiff maintains that Defendants violated his right to equal protection by engaging in disparate treatment and harassment based on his age, disability, and in retaliation for his protected speech.  (Pl.'s Br. at 16.)  Defendants argue that Plaintiff has failed to allege a violation of the Equal Protection Clause because: (1) Plaintiff is not a member of a protected class; (2) Plaintiff is a public employee and, therefore, barred from asserting a class-of-one theory for Equal Protection purposes; and (3) Plaintiff has failed to allege that there are others who are similarly situated.  (Defs.' Br. at 15-16.)

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike."  Missere v. Gross, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011).  Here, because as discussed above, Plaintiff has not adequately pleaded that he is disabled, and does not allege that he is a member of any other protected class, he may only proceed under one of two equal protection theories: selective enforcement of "class of one."  Id. (internal quotation marks and citation omitted).  In order to adequately allege a selective enforcement claim, a plaintiff must allege: "(1) [he was] treated differently from other similarly situated individuals and (2) this differential treatment was based on impermissible consideration such as race, religion, intent to inhibit or punish the exercise

of constitutional rights, or malicious or bad faith intent to injure a person." MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 370 (E.D.N.Y. 2010) (internal quotation marks and citation omitted). Alternatively, where a plaintiff does not plead selective treatment based upon impermissible considerations, he can also allege a class-of-one equal protection claim. Id. at 371. "In order to adequately allege an equal protection claim on a 'class of one' theory, a plaintiff must demonstrate that: (1) he was 'intentionally treated differently from others similarly situated,' and (2) 'that there is no rational basis for the difference in treatment.'" Vaher v. Town of Orangetown, N.Y., 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000)). Courts in this Circuit are split regarding the definition of "similarly situated" in selective enforcement and class-of-one cases. Some courts have held that the definitions are the same in both cases, and the plaintiff must "establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Roman Catholic Diocese of Rockville Centre, N.Y. v.

Inc. Vill. of Old Westbury, No. 09-CV-5195, 2012 WL 1392365, at *12 (E.D.N.Y. Apr. 23, 2012) (internal quotation marks and citations omitted (collecting cases). Other courts have applied a somewhat less stringent standard in selective enforcement cases, requiring "plaintiffs to show that plaintiff and comparators were 'similarly situated in all material respects,' or that 'a prudent person, looking objectively at the incidents, would think them roughly equivalent.'" Missere, 826 F. Supp. 2d at 561 (quoting Vassallo v. Lando, 591 F. Supp. 2d 172, 184 (E.D.N.Y. 2008); Yajure v. DiMarzo, 130 F. Supp. 2d 568, 572 (S.D.N.Y. 2001)).

Defendants are correct that the Equal Protection Clause does not apply to public employees, like Plaintiff, who are asserting a class-of-one theory of discrimination. Thus, such an argument is foreclosed in this case. See Gentile v. Nulty, 769 F. Supp. 2d 573, 578-81 (S.D.N.Y. 2011).

Additionally, even applying the less stringent standard, Plaintiff has failed to adequately allege others "similarly situated." Plaintiff's Complaint only discusses actions taken with respect to Plaintiff, but there is no discussion whatsoever of any similarities between Plaintiff and others. See Vaher, 916 F. Supp. 2d at 434 (dismissing an equal protection claim because plaintiff did "not allege that he was treated differently from any identified individuals, let alone individuals who he claims were similarly situated to him in any respect" (emphasis in original)).

The Court will not read between the lines of the Complaint and deem Plaintiff similarly situated to others. Plaintiff's equal protection claim is therefore DISMISSED WITHOUT PREJUDICE.

D. Due Process

Plaintiff contends that he maintained a property interest in his position as Coordinator of the Honors Program because of his tenured faculty position, and was deprived procedural due process when the position was eliminated without a hearing. (Pl.'s Br. at 17.) The Court disagrees.

The Fourteenth Amendment's Due Process Clause "guarantees procedural fairness when a state action deprives a citizen of a protected interest in life, liberty, or property." Wiesner v. Rosenberger, No. 98-CV-1512, 1998 WL 695927, at *3 (S.D.N.Y. Oct. 8, 1998). To invoke the Due Process Clause, a plaintiff must seek to "protect something more than an ordinary contractual right," S & D Maint. Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988), or a "'unilateral expectation,'" Looney v. Black, 702 F.3d 701, 706 (2d Cir. 2012) (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)).

It is well established that a tenured teacher "a protected property interest in [his] position which entitle[s him] to due process prior to removal" by a school district. Gipson v. Hempstead Union Free Sch. Dist., No. 09-CV-5466, 2010 WL 4942650,

at *3 (E.D.N.Y. Nov. 18, 2010).  However, "'personnel decisions short of termination do not constitute a deprivation of a property interest' cognizable under the Fourteenth Amendment."  Mirabilio v. Reg'l Sch. Dist. 16, No. 11-CV-1468, 2013 WL 5436825, at *2 (D. Conn. Sept. 27, 2013) aff'd, 761 F.3d 212 (2d Cir. 2014) (quoting Wargat v. Long, 590 F. Supp. 1213, 1215 (D. Conn. 1984)); accord Bernheim v. Litt, 79 F.3d 318, 322-23 (2d Cir. 1996) ("the concept of tenure in the teaching profession 'does not entitle a teacher to a specific class or proscribe assignment to proper duties of a teacher other than classroom teaching of a specific subject.'" (quoting Adlerstein v. Board of Educ. of N.Y. City, 64 N.Y.2d 90, 99, 474 N.E.2d 209, 212-13, 485 N.Y.S.2d 1, 5 (1984))); Guida v. Police Dep't of City of New York, No. 96-CV-0355, 1997 WL 269508, at *2 (S.D.N.Y. May 20, 1997).  Thus, although Plaintiff has a property interest in his position as a tenured professor, his property interest did not extend to the honors coordinator position, which the school had authority to eliminate without holding a hearing.  Therefore, Plaintiff's procedural due process claim is DISMISSED WITHOUT PREJUDICE.

    E.    Hostile Work Environment

         "A hostile work environment arises 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

31

environment.'" <u>El v. N.Y. State Psychiatric Inst.</u>, No. 13-CV-6628, 2014 WL 4229964, at *5 (S.D.N.Y. Aug. 19, 2014) (brackets omitted) (quoting <u>Amtrack v. Morgan</u>, 536 U.S. 101, 116, 122 S. Ct. 2061, 2074, 153 L. Ed. 2d 106 (2002)).  To state a claim for hostile work environment,

> a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive--that is, . . . creates an environment that a reasonable person would find hostile or abusive;" (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive;" and (3) "creates such an environment because of the plaintiff's [protected characteristic]."

<u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007) (ellipsis in original) (quoting <u>Gregory v. Daly</u>, 243 F.3d 687, 691-92 (2d Cir. 2001)).  "[A] work environment's hostility should be assessed based on the 'totality of the circumstances.'"  <u>Id.</u> at 113 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993)).  In assessing the totality of the circumstances, the court should consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."  <u>Id.</u> (internal quotation marks and citation omitted).

In support of his hostile work environment claim, Plaintiff asserts that Defendants engaged in an "orchestrated program of harassment and differential treatment predicated upon [his] age, disability and in retaliation for [his] protected speech." (Compl. ¶ 33.) This assertion is conclusory, however, and the Complaint lacks any further detail about the nature and frequency of the conduct which created the allegedly hostile work environment. See Alfano v. Costello, 294 F.3d 365, 379-80 (2d Cir. 2002). Accordingly, Defendants' motion to dismiss the hostile work environment claim is GRANTED and the claim is DISMISSED WITHOUT PREJUDICE.

VI. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff's claims against Defendant Britton for discriminatory and retaliatory conduct, "were not part of the DHR Charges and are therefore, not properly brought before this Court." (Defs.' Br. at 19.) Defendants' also assert that Plaintiff's claims that he vocalized opposition to various SCCC practices were not presented to the DHR in either of his claims. (Defs.' Br. at 19.)

A plaintiff bringing claims under the ADA must exhaust certain administrative remedies before initiating suit in the district court. See Curto v. Edmundson, 392 F.3d 502, 503 (2d Cir. 2004), cert. denied 545 U.S. 1133, 125 S. Ct. 2944, 162 L. Ed. 2d 875 (2005). "[A] plaintiff typically may raise in a

district court complaint only those claims that either were included in or are 'reasonably related to' the allegations contained in [his] EEOC charge." Holtz v. Rockefeller & Co., 258 F.3d 62, 83 (2d Cir. 2001) (quoting Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir 1993), superseded by statute on other grounds as stated in, Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998)); see generally Francis v. City of New York, 235 F.3d 763, 767-68 (2d Cir. 2000) (exhaustion requirement is not jurisdictional, but subject to waiver, estoppel, and equitable tolling)). A claim is "'reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)).

Plaintiff's claims of discriminatory and retaliatory conduct against Defendant Britton were not part of the DHR charges and are therefore not properly before this Court. (See Defs.' Exs. at 23-30, 36-44.) Additionally, Plaintiff's current pleading alleges that he continuously vocalized his opposition to various SCCC practices dating back to 2005, and only reiterated them in 2013. (Compl. ¶¶ 25-30.) This information was not presented to the DHR in either of Plaintiff's claims for the relevant time period.

Due to Plaintiff's failure to provide any allegations that would suggest discrimination on the part of Defendant Britton or Plaintiff's claim that he vocalized opposition to SCCC's practices in 2005, the EEOC and DHR were denied adequate notice to investigate discrimination on these bases. Accordingly, Defendants' motion to dismiss insofar as it seeks dismissal of Plaintiff's discrimination and retaliation claims against Defendant Britton for failure to exhaust administrative remedies is GRANTED. These claims are DISMISSED WITH PREJUDICE.

VII. <u>State Law Claims</u>

Finally, the Court declines supplemental jurisdiction as to Plaintiff's remaining state law claims. Under <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988), a federal court should generally decline to exercise supplemental jurisdiction over state law claims if, as is the case here, the Complaint asserts federal question jurisdiction but not diversity jurisdiction, and the Complaint's federal claims are dismissed in the litigation's early stages. <u>See</u> <u>also</u> 28 U.S.C. § 1367(c)(3); <u>Tops Mkts., Inc. v. Quality Mkts., Inc.</u>, 142 F.3d 90, 103 (2d Cir. 1998) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them <u>without</u> prejudice." (emphasis in original)).

Accordingly, Plaintiff's New York State Human Rights Law claims are DISMISSED WITHOUT PREJUDICE.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Specifically, Plaintiff's ADA and ADEA claims against the individual Defendants, as well as Plaintiff's First Amendment retaliation claims are DISMISSED WITH PREJUDICE.  Plaintiff's claims for discrimination under the ADA and ADEA, as well as Plaintiff's Equal Protection Clause, Due Process Clause, hostile work environment claims, and Section 1983 claim against the County are DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO REPLEAD.  If Plaintiff wishes to file an Amended Complaint he must do so within thirty (30) days of the date of this ORDER. If Plaintiff fails to file an Amended Complaint the ADA, ADEA, Equal Protection Clause, Due Process Clause, hostile work environment claims, and Section 1983 claim against the County will be DISMISSED WITH PREJUDICE.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      August   26  , 2015
            Central Islip, NY